## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DOUGLAS BRIANT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| PIVOTAL SOFTWARE, INC., PAUL MARITZ, ROBERT MEE, MICHAEL S. DELL, EGON DURBAN, WILLIAM D. GREEN, MARCY S. KLEVORN, MADELYN LANKTON, and ZANE ROWE, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Douglas Briant, by his undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       This is an action brought by Plaintiff against Pivotal Software, Inc. ("Pivotal" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Pivotal, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of Pivotal by VMware, Inc. ("VMware") (the "Proposed Transaction").

2.       On August 22, 2019, Pivotal entered into an agreement and plan of merger (the

1

"Merger Agreement"), pursuant to which VMware's wholly-owned subsidiary, Raven Transaction Sub, Inc. ("Merger Sub"), will be merged with and into Pivotal, with Pivotal surviving as a wholly-owned subsidiary of VMware.

3.      Under the terms of the Proposed Transaction, Pivotal shareholders will be entitled to receive $15.00 in cash for each share of Pivotal Class A common stock they hold (the "Merger Consideration").

4.      On October 10, 2019, in order to convince Pivotal public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Pivotal; (ii) the valuation analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (iii) the financial services Morgan Stanley provided for VMware and Dell Technologies Inc. ("Dell"), in the two years prior to rendering its fairness opinion for the Proposed Transaction.

6.      The special meeting of Pivotal's shareholders to vote on the Proposed Transaction is imminent, especially since the Proposed Transaction is expected to close on or before January 31, 2020 (the "Shareholder Vote").  Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so Pivotal's shareholders can properly exercise their corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Pivotal's public common

shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391 because Defendants are found or are inhabitants or transact business in this District.  Indeed, Pivotal's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  In addition, Pivotal's proxy solicitation agent, Innisfree M&A Incorporated, is located in this District at 501 Madison Avenue, New York, NY 10022.

## **PARTIES**

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Pivotal common stock.

12.     Defendant, Pivotal is a public company incorporated under the laws of Delaware with principal executive offices located at 875 Howard Street, San Francisco, CA 94103.   Pivotal's common stock is traded on the NYSE under the ticker symbol "PVTL."

13.     Defendant, Paul Maritz is, and has been at all relevant times, a director of the Company and Chairman of the Board.

14.     Defendant, Robert Mee is, and has been at all relevant times, a director of the Company and Chief Executive Officer.

15.     Defendant, Michael S. Dell is, and has been at all relevant times, a director of the Company.

16.     Defendant, Egon Durban is, and has been at all relevant times, a director of the Company.

17.     Defendant, William D. Green is, and has been at all relevant times, a director of the Company.

18.     Defendant, Marcy S. Klevorn is, and has been at all relevant times, a director of the Company.  Further, Klevorn served on the Pivotal Special Committee that evaluated and negotiated the Proposed Transaction.  Proxy at 24.

19.     Defendant, Madelyn Lankton is, and has been at all relevant times, a director of the Company.  Lankton also served on the Pivotal Special Committee that evaluated and negotiated the Proposed Transaction.  *Id*.

20.     Defendant, Zane Rowe is, and has been at all relevant times, a director of the Company.

21.     The Defendants identified in paragraphs 13 through 20 are collectively referred to

herein as the "Board" or the "Individual Defendants," and together with Pivotal, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.     Pivotal provides a cloud-native platform that makes software development and information technology (IT) operations a strategic advantage for customers.  The Company's cloud-native platforms include: pivotal cloud foundry (PCF) and pivotal labs.  The Company's common platform services include: shared monitoring and logging, shared security, and shared networking. Pivotal's PCF supports all of the major private and public cloud platforms, like Amazon Web Services, Microsoft Azure, Google Cloud Platform, OpenStack, and VMware vSphere.

23.     On August 22, 2019, the Board caused the Company to enter into the Merger Agreement with VMware.

24.     Pursuant to the terms of the Merger Agreement, each share of Pivotal Class A common stock will be converted into the right to receive $15.00 in cash per share.

25.     According to the August 22, 2019 press release announcing the Proposed Transaction:

**VMware Signs Definitive Agreement to Acquire Pivotal Software**
*Accelerates Any Cloud, Any App, Any Device Strategy*
*Positions VMware to deliver the most comprehensive enterprise-grade Kubernetes-based portfolio for Modern Applications*
*$11.71 Blended Price Per Share; $15 Cash Per Share for Public Stockholders*
*Enterprise Value of $2.7 billion*

PALO ALTO, Calif., Aug. 22, 2019 (GLOBE NEWSWIRE) -- VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, and Pivotal Software, Inc. (NYSE: PVTL), a leading cloud-native platform provider, today announced that the companies have entered into a definitive agreement under which VMware will acquire Pivotal for a blended price per share of $11.71, comprised of $15 per share in cash to Class A stockholders, and the exchange of shares of VMware's Class B common stock for shares of Pivotal Class B common stock held by Dell Technologies, at an exchange ratio of 0.0550 shares of VMware Class B stock for each share of Pivotal Class B stock. In total, the merger consideration represents an enterprise value for Pivotal of $2.7 billion. The Board of Directors of each of VMware and Pivotal have approved this transaction, following the recommendations of special committees

5

composed of independent directors of each company. Following the close of the transaction, VMware will be positioned to deliver the most comprehensive enterprise-grade Kubernetes-based portfolio for modern applications.

Pivotal is a technology leader that is transforming the way the world's largest companies build and run software applications. For the last six years, Pivotal has been at the leading-edge of modern software development, helping organizations transform how they build and run their most important applications. Pivotal offers a powerful set of assets including a leading developer-centric platform, tools and services that accelerate modern app development. Additionally, Pivotal is a major contributor to the Spring developer framework, which sees more than 75 million downloads per month. The company is fully embracing Kubernetes with the recent launch of Pivotal Spring Runtime for Kubernetes and the upcoming Pivotal Application Service for Kubernetes.

VMware and Pivotal share a long history of collaboration and joint innovation, reflected in the co-development and launch of VMware Pivotal Container Service (PKS) in February of 2018. VMware has increased its Kubernetes-related investments over the past year with the acquisition of Heptio, and the Kubernetes founders, to become one of the top three contributors to Kubernetes. The combination of Pivotal's developer experience and assets with VMware's IT expertise and infrastructure will help deliver a comprehensive portfolio of products, tools and services necessary to build, run and manage modern applications on Kubernetes infrastructure with velocity and efficiency.

"Kubernetes is emerging as the de facto standard for multi-cloud modern apps. We are excited to combine Pivotal's development platform, tools and services with VMware's infrastructure capabilities to deliver a comprehensive Kubernetes portfolio to build, run and manage modern applications," said Pat Gelsinger, CEO of VMware. "Importantly, adding Pivotal to our platform, accelerates our broader Any Cloud, Any App, Any Device vision and reinforces our leadership position in modern multi-cloud IT infrastructure."

"The time is ideal to join forces with VMware, an industry leader who shares our commitment to open source community contributions and our focus on adding developer value on top of Kubernetes," said Rob Mee, CEO, Pivotal. "VMware has a proven track record of helping organizations run and manage consistent infrastructure in support of mission critical applications, and our two companies have already built a strong foundation on our successful VMware PKS collaboration. We look forward to continuing our work with VMware to provide even more value to customers building modern applications."

"The VMware Board of Directors is committed to creating value for all

stockholders," said Karen Dykstra, Chairperson of the Special Committee of VMware's Board of Directors. "After a thorough and independent evaluation with its advisors, and working closely with the VMware management team, the Special Committee recommended the Board approve this transaction with Pivotal given its strong strategic and long-term value to the company and its customers."

**Details Regarding the Transaction**

Under the terms of the transaction, Pivotal's Class A common stockholders will receive $15.00 per share cash for each share held, and Pivotal's Class B common stockholder, Dell Technologies, will receive approximately 7.2 million shares of VMware Class B common stock, at an exchange ratio of 0.0550 shares of VMware Class B common stock for each share of Pivotal Class B common stock. This transaction, in aggregate, results in an expected net cash payout for VMware of $0.8 billion. The impact of equity issued to Dell Technologies would increase its ownership stake in VMware by approximately 0.34 percentage points to 81.09% based on the shares currently outstanding. VMware currently holds 15 percent of fully-diluted outstanding shares of Pivotal. The transaction is expected to be funded through cash on the balance sheet, accessing short-term borrowing capacity, and approximately 7.2 million shares of VMware Class B common stock to Dell. Closing of the transaction is subject to customary closing conditions including the approval of the merger agreement by the holders of at least a majority of the outstanding shares of Pivotal common stock not owned by VMware or Dell Technologies or their affiliates (a "majority-of-the-minority" vote) and is expected in the second half of VMware's fiscal year 2020, which ends January 31, 2020.

**Advisors**

J.P. Morgan Securities LLC served as financial advisor and Wilson Sonsini Goodrich & Rosati served as legal counsel to VMware. Lazard served as financial advisor and Gibson, Dunn & Crutcher LLP served as legal counsel to the Special Committee of the VMware Board of Directors. Davis Polk & Wardwell LLP served as legal counsel to Pivotal. Morgan Stanley & Co. LLC served as financial advisor and Latham & Watkins, LLP served as legal counsel to the Special Committee of the Pivotal Board of Directors.

**The Proxy Omits Material Information**

26.     On October 10, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC. The special meeting of Pivotal stockholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material

information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

27.     In particular, the Proxy fails to provide enough information regarding: (i) financial projections for the Company, specifically the line items used to calculate Pivotal's EBITDA; (ii) Morgan Stanley's financial analyses; and (iii) the financial services Morgan Stanley provided for VMware and Dell, in the two years prior to rendering its fairness opinion for the Proposed Transaction.

28.     First, the Proxy fails to disclose the line items used to calculate EBITDA in each of the *Revised Outlook* projections, which thus renders the Proxy materially misleading.

29.     If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Morgan Stanley, but have omitted crucial line items. Thus, Defendants' omission renders the projections disclosed on pages 81-82 of the Proxy misleading.

30.     Second, the Proxy omits material information regarding the financial analyses Morgan Stanley conducted in evaluating the Proposed Transaction.

31.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy fails to disclose the individual metrics observed for each of the selected comparable companies. Proxy at 46.  Further, the Proxy fails to disclose the fully diluted capitalization of Pivotal as of August 2, 2019, provided to Morgan Stanley by the Company. *Id.*

8

32.     Regarding the *Discounted Equity Value Analysis*, the Proxy fails to disclose Pivotal's estimated future net debt at the end of fiscal years 2022, 2023, and 2024. *Id.* at 47.  Additionally, the Proxy fails to disclose the Company's fully diluted capitalization as of August 2, 2019. *Id.*

33.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy omits: (i) the range of terminal values calculated for Pivotal in 2028; (ii) the inputs and assumptions underlying the perpetuity growth rates ranging from 2.5% to 3.5% applied; (iii) the Company's net debt as of August 2, 2019; and (iv) Pivotal's fully diluted capitalization as of August 2, 2019. *Id.* at 47-48.

34.     These key inputs are material to Pivotal shareholders, and their omission renders the summary of Morgan Stanley's *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can *markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Pivotal's shareholders cannot evaluate for themselves the reliability of Morgan Stanley's *Discounted Cash Flow Analysis*,

make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Morgan Stanley, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

35.    Third, in the two years prior to Morgan Stanley rendering its fairness opinion for the Proposed Transaction, the Proxy discloses that Morgan Stanley provided financial services for VMware and Dell. Proxy at 24, 52.  However, the Proxy fails to disclose the nature of the services rendered.

36.    Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

37.    In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

38.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to

solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

41.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

42.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) Pivotal's financial projections; (ii) the valuation analyses performed by Morgan Stanley in support of its fairness opinion; and (iii) the financial services Morgan Stanley provided for VMware and Dell, in the two years prior to rendering its fairness opinion.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

44.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Morgan Stanley reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Morgan Stanley, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Morgan Stanley's analyses in connection with their receipt of the fairness opinions, question Morgan Stanley as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

46.     Pivotal is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

47.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Pivotal within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Pivotal, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

13

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

52.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the

Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result

of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

<u>**JURY DEMAND**</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 14, 2019                          **MONTEVERDE & ASSOCIATES PC**

                                        By:    */s/ Juan E. Monteverde*
                                                Juan E. Monteverde (JM-8169)
                                                The Empire State Building
                                                350 Fifth Avenue, Suite 4405
                                                New York, NY 10118
                                                Tel:(212) 971-1341
                                                Fax:(212) 202-7880
                                                Email: jmonteverde@monteverdelaw.com

                                                *Attorneys for Plaintiff*